[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case came before this court for trial on the merits of the plaintiff's claim of nonpayment for goods shipped and the defendant's special defenses and counterclaim alleging that the goods were nonconforming and that it was damaged thereby.
The court finds the facts to be as follows. The plaintiff produces potpourri in an operation in Santa Ana, California, in which he employs from two to twenty persons, depending on the volume of orders. As of 1992, the plaintiff was personally engaged in producing the product, ordering, selling, quality control and all functions of this small business.
On August 28, 1992, in response to a request from a representative of the defendant referred to only as Mr. Ganun, the plaintiff sent the defendant samples of the various varieties of potpourri he produced. Potpourri is a blend of dried flowers and spices and such other items as bark and wood shavings that are sprayed with fragrance and packaged to be used as a room freshener. It loses its odor after about six months
The defendant operates retail outlets at which it sought to sell some of the potpourri for ninety-nine cents per bag. It also CT Page 5433-S sells products on a wholesale basis to other stores.
After receiving the plaintiff's samples, followed by some oral negotiations over price and other terms, on September 25, 1992 the defendant sent the plaintiff a purchase order (Exhibit A) for 2400 cases of various kinds of potpourri at a unit cost of forty-three cents. Six hundred of the 2400 cases were Christmas theme packages unlikely to be purchased after December 1992. The total price set forth in the purchase order was $49,536.00. The terms of payment set forth on the purchase order and accepted by the plaintiff were for half the total to be paid when the shipments were made (half of that amount fifteen days after the first shipment to the defendant's warehouse in Bronx N.Y. and half thirty days after the shipment) and the remainder to be paid forty-five days after the date of shipment. The freight terms were F.O.B. When the plaintiff was unable to find a shipper at a price agreeable to the defendant, the defendant selected the shipper and arranged for the shipping itself, assuming all risks arising from shipping.
The plaintiff sent the first shipment of 1200 cases on October 5, 1992. He sent the defendant an invoice requesting checks that he could deposit on October 20, 1992 and November 4, 1992. Instead of making payment fifteen days after the first half of the order was shipped, the defendant advised the plaintiff on October 16, 1992 that the shipment had been delayed by the carrier and proposed delaying payment for two weeks as to the first check and four weeks as to the second check (Exhibit 3). The plaintiff, who had bills from suppliers in connection with this large order, declined to change the payment terms as requested. (Exhibit D).
The defendant sent the plaintiff two post-dated checks, one dated October 19, 1992 (#1640) and one dated thereafter (#1641) both in the amount of $12,000.00. The earlier check was dishonored on October 23, 1992 because the defendant stopped payment on it. (Exhibit E). After the plaintiff complained, he was told by the defendant to deposit the second check. That check cleared on November 6, 1992 only after multiple calls to defendant's bank.
The plaintiff shipped the second container of 1200 cases on October 21, 1992, before he became aware that the first payment had not cleared. The defendant sent a replacement check for check #1640, which the plaintiff deposited on November 4, 1992. That CT Page 5433-T check was returned because the defendant had closed the account on which it was drawn. After several phone calls, the defendant finally replaced check #1640 with a cashier's check in the amount of $12,000 on November 27, 1992. The court finds that the defendant failed to make either of the first two payments to the plaintiff at the time specified in the purchase order under circumstances that strongly suggest that it was securing by self-help the delay in payment to which the plaintiff had not agreed. This course of conduct likewise reflects poorly on the defendant's credibility.
By the terms of the purchase order, payment of the balance, $25,536.00, was due on November 20, 1992.
The first shipment of 12,000 cases was received at the defendant's warehouse on October 19, 1992. The defendant raised no claim of any defect in the goods upon receipt. At the end of November 1992, after the plaintiff's protracted efforts to obtain payment, the defendant told the plaintiff that it had received complaints that the potpourri lacked fragrance and that the defendant refused to pay the balance.
The defendant presented no credible evidence to support its claim that the potpourri lacked fragrance, as it claimed when the plaintiff demanded the final payment. The court finds credible the plaintiff's testimony that he prepared the product in conformity with the samples sent. In early December 1992 when the plaintiff asked the defendant to send samples to him of the allegedly defective product so that he could have it chemically tested, the defendant delayed, demanded that the plaintiff fly to the Bronx from California to get samples, stated that the plaintiff must prove that fragrance had been sprayed on the potpourri, and neither paid for the goods nor sent the plaintiff proof that they did not conform to the samples on which the orders were based.
The defendant introduced as its sole evidence in support of its claim that the goods were nonconforming some invoices indicating returns of orders shipped to two retail stores. (Exhibit 9). The documents do not reveal the reason for the returns; and without testimony from the receivers of the goods, this court cannot conclude that the reason for, the return was a defect rather than some other common reason such as a mistaken shipment or cancellation.
While the defendant may have told the plaintiff that the CT Page 5433-U product lacked fragrance, it did not prove that this statement was true.
The court finds the plaintiff to be a credible witness who was concerned with providing a good product and good service in connection with the biggest order he had received, especially since the defendant had suggested orders of similar size to follow. The court finds the defendant presented no credible witness to establish that the product did not conform to the samples. The defendant's course of conduct suggested an attempt to shift to the supplier the cost of the unpleasant fact that it had bought more potpourri than it could sell within the shelf life of that product.
Discussion
The plaintiff has proven his claim of nonpayment in accordance with the terms of the purchase order. The plaintiff fully performed his obligations; the defendant failed to make full payment.
The defendant has not proven that it rejected the goods pursuant to C.G.S. § 42a-2-1602. A buyer accepts goods and must pay for them if it fails to reject upon reasonable opportunity to inspect. Since the goods arrived on October 19, 1992, and since they were goods with a six-month shelf life and some were seasonal, with a two month shelf life, inspection should have been immediate. Rejection in late November was not "within a reasonable time" pursuant to § 42a-2-602.
The defendant did not establish that any alleged nonconformity was induced by the difficulty of discovery or the seller's assurance of cover, and the court finds that the defendant did not revoke acceptance within a reasonable time after it should have discovered the alleged nonconformity, pursuant to C.G.S. § 42a-2-608.
More fundamentally, the defendant did not present competent, credible evidence that the goods were nonconforming; therefore, the court finds that its attempted rejection and non-payment were wrongful.
The plaintiff has established partial nonpayment for goods not proven to be nonconforming. He is entitled to recover the balance due, which the court finds to be $25,536.00 plus interest CT Page 5433-V from November 20, 1992 at the rate established pursuant to C.G.S. § 37-3a (10%) in the amount of $9,895.20. While the plaintiff made references to incidental damages, he failed to prove the amount of such damages.
The defendant has not proven any of its special defenses nor its counterclaim, as it has not established that the goods did not conform to sample.
Conclusion
Judgment shall enter in favor of the plaintiff against the defendant in the amount of $35,431.20 plus court costs to be taxed upon applicant to the clerk.
As to the defendant's counterclaim, judgment shall enter in favor of the plaintiff.
Beverly J. Hodgson Judge of the Superior Court